1-2-4-4-1-8 Michael R. Eskew v. Sequent Inc. at all. Arguments not to exceed 15 minutes per side. Mr. Cantor for appellant. Thank you. Your Honors, good afternoon. Judge Batchelder, if I may, I'd like to reserve at least three minutes of my argument. May it please the Court. My client, Michael Eskew, sold his company worth about $1.2 million to Sequent. Received back from Sequent 14,000 shares of their stock that represented about 12% of that company. Throughout the year-long negotiation leading up to the consummation, to the closing, Mr. Eskew nor his lawyers were ever told that Sequent was the subject of a criminal investigation from the Department of Labor and the Department of Justice. He was not told what the source of that, what the cause of that investigation was. Was that for about three years, Sequent and its owners had been moving about $500,000 a year from the Health and Welfare Trust through a shell corporation that they owned into Sequent, inflating Sequent's profitability. And then, in mid-2005, getting a little greedier, they moved an additional $500,000 through the shell corporation so that it could buy the shareholder notes that were in Sequent, relieving the shareholders of the obligation to repay those notes. The Department of Labor immediately saw that for what it was and opened a criminal investigation and immediately informed Sequent. Sequent, about a month later, reversed the transaction in an effort to try to undo the damage. Throughout the entire period, Mr. Eskew, his lawyers, were not told about the criminal investigation, were not told about the facts. The district judge dismissed... Did you admit that you knew a civil investigation was ongoing by the Department of Labor? We were told it was a routine audit, inquiry, investigation. There was no civil or criminal to it. And so, knowing that, your client never undertook any further questions or any contact? My client understood that to be a routine DOL audit, DOL inquiry. And, in fact, the expert who both companies hired together, an industry expert, to value the two companies, was told that there was a Department of Labor inquiry or audit, and she understood that to be routine. And she testified. Had she been told criminal, it would have been completely different. I know, but the word routine, is it in the notice? I'm sorry, Your Honor, by notice, you're referring to... That was one of the attachments that your client reviewed. Was it a routine or they were subject to an audit by DOL? They did not see a notice. I believe, in due diligence, there was no document from the Department of Labor that was produced. What I mean is, when this letter concerning the audit was given to your client as part of the due diligence, did your client in any way investigate that to find out what the extent of that was? They did not. They read the addressee of the letter. This was the letter that the company sent to the auditor of the health and welfare plan, not the company auditor. And it was addressed to a different auditor than the company auditor, and on the top it said, concerning health and welfare plan. The lawyer read that, said, well, this isn't the letter that's called for in due diligence, this isn't the letter that I'm looking for, and he didn't read on. He testified to that, and he testified that that was the reason he didn't read on. Had he read on, what he would have seen would have been misleading, if that was intended to be the disclosure. It said that there was a criminal investigation into the health and welfare plan. That's not accurate. The health and welfare plan was the victim. It wasn't the predator. The investigation was into Sequent and into its CEO, Mr. Hutter, and into several other directors. It was not into the health and welfare plan. We contend, and we think that the judge, by dismissing the fraud claim, deprived Mr. Eskew of an appropriate inference, that that letter was put there intentionally by the general counsel in the hope of eliciting exactly the reaction that occurred. That the lawyer for Mr. Eskew would look at the letter, see it wasn't relevant, move on, and then Sequent could argue they disclosed the word criminal. We had a trial in this case concerning other issues, and the general counsel appeared as a witness, and we had the opportunity to cross-examine him in that context in front of a jury. And he admitted that there were other documents, some of which he had authored, that should have been produced, and that he did not produce them. This was the only letter that they can point to in the entire record that says, has the word criminal on it. And in that context, I believe the jury should have had the opportunity to answer the question, was that letter put there intentionally to mislead? Where were the other letters that we know exist, that were produced in discovery, that were not put there that should have been there? You acknowledge that this was an evolving situation in terms of the DOL's investigation and what they were doing, and it was evolving at or about the time that this sale was being investigated by your clients. Well, certainly it was evolving, but not in a relevant way to this. But in hindsight, we see exactly what happened. Of course. But I'm concerned about, as this case moved and due diligence was undertaken, what was wrong? What should they have done that they knew was going to happen? There might happen, it could happen, and there was no criminal indictment ever handed down or any criminal penalties, right? But there was a delayed prosecution agreement at the end. Well, that's part of the settlement. It's settled. Correct. And a fine was paid. Correct. But the critical question is, at the time of closing, what should have been done up until that time? So they're selling a piece of their company, 14,000 shares of stock in a closely held company. The sellers knew exactly what the situation was. But that's where my question, I'm sorry, that's where my questions come. They knew what the situation was. When did they know that? They knew it on January 20, 2006. And the shareholders and the CEO were all involved in the underlying unlawful activity for three years. They approved all the budgets. They moved the money through the Shell Corporation. It was their shareholder agreements that were being taken off the books. They knew all about that. When Mr. Hutter learned, the day he learned of the criminal investigation, he sent an email to his immediate subordinate that says, make not any further transfers of funds from the trust. He knew exactly what the problem was. They admitted in a resolution in March of 2006 to a prohibited ERISA transaction. They put that into a board resolution. Now, they're selling 14,000 shares of their stock to a person who doesn't know anything about this. They have an obligation under the law and under the contract to make a full disclosure. I don't think that's a radical idea. Mr. Eskew could have chosen to go forward or not go forward, but they had the obligation to tell him, we have a problem. You need to know about that before you buy our stock. And that's what didn't happen here. The district judge, as I said, there's plenty of evidence of the concealment. The expert witness, the expert evaluator testified she wasn't told. She valued the company, Sequent, without knowing the threat that it was under, that its CEO, that its CEO and its senior officers were all the subject of an investigation. She testified, had she known, she would have told Mr. Eskew not to proceed. Well, you conceded they knew there was a civil investigation, although you characterize it as routine. Now, are you modifying that if she had known it was a criminal? Correct. That's her testimony. How about if that were routine? I'm sorry, sir? Are there routine criminal investigations too? The evidence is that based on what she was told, she was not concerned. She was told there was a DOL inquiry and DOL investigation. One of the elements of a fraud, of proving fraud, is justifiable reliance, and you have to be justified in your reliance, and to be justified in the reliance, you have to exercise some due diligence. And, I mean, isn't that the problem here, that they're on notice and they really don't do anything to investigate further? They were not on notice of a criminal investigation. They were not on notice of the underlying embezzlement. They would have known there was a criminal investigation if they had read the full text of the letter, but they didn't read the full text, at least allegedly. Wouldn't due diligence entail reading the entire document that is provided rather than stopping at the heading or wherever they stopped? Mr. Eskew's lawyer testified that had he read all the way down. Isn't that a requirement of due diligence? Here are the documents that I've given you for your due diligence investigation. Isn't that part of due diligence to read it, whatever they've given you? They agreed, the two parties agreed on what would be given. This was not a document that they were supposed to have given. It was in there. It had the wrong information at the top, and it led the lawyer. Do you have an answer to my question? Does due diligence entail reading the documents that are given to you or not? I believe there's a judgment to be made by the lawyer doing the due diligence as to whether he believes the document given to him is relevant and worth reading. This document, at its top, was not a document relevant to the transaction. In the body it might have been, but at the top it wasn't. And the question that Your Honor is asking is, just because it was there, should he have gone on and read it? And the answer is he made a judgment based on what he saw that it was not relevant, and that was a proper judgment based on what he saw. What he didn't do is go on and read something he thought was irrelevant. That's in the record. That's the testimony. In addition to the fraud claim, the district judge, we believe, made an error in dismissing the contract claim. He simply disregarded this court's holding in Arcade. I have some sympathy for the district judge because you argued that this survival clause in the contract was a statute of limitations, and that's how you got the counterclaim for breach of contract dismissed. Isn't that correct? That is not correct. No? I thought that's what you argued, and I thought that's what he ruled, and I thought you had won on the basis of your argument that this was a statute of limitations. I'm wrong on that? Yes. Okay. The district judge confused establishing a claim under a contract with bringing that claim into court within the limitations period. Mr. Eskew gave notice of the breach of warranty just as the contract required within two years under the notice provision of Section 11 of the contract. Sequent did not do that. They, in their counterclaim, brought a breach of warranty claim for the first time well after the two-year survival period had ended. The two-year survival period expired. That claim was time-barred because it was no longer ñ there was really no claim. The claim hadn't been made on a timely basis under the contract. Okay. Your position was that the survival clause did establish a statute of limitations period, right, as to the counterclaim? No. I'm sorry. Why would it be barred otherwise? Because the promise that is the warranty, part of the rep and warranty, the promise expires at the end of the survival period. What a survival period recognizes is that in a business transaction, the buyer may not be able to determine whether or not a warranty has been breached at closing, so an additional period is allowed for that discovery. In this contract, the reps and warranties were very carefully crafted. There are three different survival periods, indefinite, seven years, and three years, depending on which warranty you're looking at. And if you make your claim within the warranty period, then the breach of warranty claim is perfected, and you can then bring it within the limitations period. I have a very simple example, if I might. So A promises to perform for B for two years, but breaches that after one year. The promise goes on for two years, but B can bring that claim any time within the statute of limitations period, eight years if it's a written contract. That's what we're dealing with here. You've got a contractual issue about a warranty and when the claim must be perfected under the contract, and then separately, when can that breach claim be brought into court? What's the limitations period? That's what Arcade recognizes. Arcade recognizes that if the parties want to vary the limitations period, they have to do it clearly. This contract makes no pretense at varying the limitations period. The district judge found that, and then he went on and conflated the arguments of counsel to say that they both agreed that there should be a limitations period in the agreement. There was never, never an argument like that made at the district court level. We argued survival clause. Sequint argued limitations period. I think my time is up. Thank you. Thank you, counsel. May it please the Court? I'm James Savage. I'm here on behalf of Sequint and the other defendants. There's no question, and it's undisputed in the record, that this case would never have been filed if either Mr. Eskew or either one of his two business lawyers, all three of whom had access to the due diligence documents, had simply read a very short letter, which was provided as the only document in response to the due diligence checklist on contingent liabilities. And that document was not buried. It was tabbed and identified in the section on litigation. They read number one, the list of cases. They read number two, the list of pending administrative cases. They read number three, which was, or they didn't read this, were some pleadings. And then number eight, the only document behind this tab. They flipped to it. They said they flipped to it. They read the rest. They looked at it and did not read at the bottom of the page where it says, I am aware of a pending U.S. Department of Labor civil and criminal investigation of the plan for plan years 2001, 2, 3, 4, and 5. Next page. I'm also aware of funds being inadvertently transferred from a trust to an affiliate that may be a prohibitive transaction of ERISA, which represents the sum total of what, with the benefit of hindsight, we didn't, the client knew at that time. Mr. Sklar, SQ's lead transactional lawyer, testified at deposition that if he had, when he was flipping through the due diligence book, if he had simply read those sentences, in his words, the deal would have stopped at that point. Judge Frost therefore held, it's undisputed, that it was sufficient disclosure because of what they admitted they would have done if they'd seen it. Now, incredibly, to go back to Judge Bell's questions, even though the DOL was all over the documents, it was in this explicitly exactly what it was, it was in the merger agreement not as a routine matter but as a DOL investigation, Mr. Sklar and Mr. Hardin, the two transactional lawyers with one of Birmingham's largest law firms, testified that they never asked any question of counsel about what that involved. We thought, sequent thought, because there is a factual dispute on whether this was orally disclosed to Mr. SQ, and there's an email that's in the record where our CEO, when he found out about the criminal investigation, sent an email to Mr. SQ, I'm so upset, I'm devastated because they claim, DOL claims we've done something illegal and we have to put a hiatus on our discussions. Mr. SQ said he never got the email, even though we have a forensic expert that reflects that he did, and he responded, call me. That's a legitimate factual dispute on whether he was told of this. But it isn't a factual dispute that the key issue was disclosed in writing. So really what the issue boils down to is can a party base a fraudulent concealment claim on a document that disclosed facts that they claim were concealed, but which was looked at but not read by them and their legal counsel. And we submit that under this court's law, the law in most cases, is that disclosure is what's required. If you don't read it, we're not going to get into the person who gave it to you having to prove that you read it. It's deemed read. It's deemed that you have constructive knowledge. And then the second issue, to go to Judge Griffin's point, is did Mr. SQ advocate summary judgment on sequence breach of contract counterclaim, or did he obtain summary judgment by advocating that the merger agreement had a two-year statute of limitations? And there's no question that he did. Record one, the interesting thing about how this came out is that it was after all the summary judgment briefing in December occurred, and Mr. SQ in March asked the court for leave to file a supplemental motion for summary judgment limited to sequence breach of contract counterclaim. And representative of the court, if granted leave, will argue that the breach of contract is barred by the contract itself because each of the representations expired by the second anniversary date of the closing, January 1. And that's record 179, page 6732. Based on that, Judge Frost gave him leave. And they filed a supplemental motion for summary judgment. As an initial matter, page 6751, sequence, quote, sequence claim is contractually time barred. Thus, at the end, the claim is time barred and fails as a matter of law. And if there was any doubt in the reply memorandum, they say that there's no issue of fact concerning the contractually barred status of sequence refiled counterclaim. And so the district court could only find in dismissing the counterclaim of sequence that it was time barred and kept the parties on an even footing. Everybody is agreeing that this is what they intended with respect to the words expire. Clearly, if either party, and no one raised arcade below, if either party had argued to Judge Frost that, well, the language doesn't support it, clearly the language doesn't support it within the meaning of this court's precedent and arcade. In that case, the court said something more is required, but no one was arguing anything as the basis for the agreement other than the language in the text, which by itself was sufficient. But if you have two parties come into court and say this is what we intended back when we executed the merger agreement, it's a different matter altogether. What is the district court supposed to do but take the parties at their word, apply it in an even-handed fashion as to both parties' respective claims, and dismiss them precisely on that basis? So is the theory of that judicial estoppel? Two theories. First theory is they agreed. You agree you cannot appeal, cannot invite error, the invited error doctrine, is that what it is? I'm sorry, Your Honor? The invited error doctrine that if you ask for something and the court grants it, then you can't appeal it, is that? No, Your Honor. I'm saying that the parties agreed and, therefore, it's an exception to arcane because there was no finding that that's the only way you can do it. But to get to your point, Your Honor, absolutely judicial estoppel is applicable. This is almost identical to the situation in this court in Woods, where a party obtained dismissal of two out of a number of claims below by arguing one position and then on appeal argued a different position to get some other claims dismissed or at least reversed. And the parties actually do agree in their briefs on what the elements of judicial estoppel are, prevail on a position, which they did. The court relies on their position to render a result contrary to another party and then takes a contrary position before this court. To go back to the fraud claim, under these circumstances where you have an explicit written disclosure, what they're essentially asking the court to do is the same, is to consider the issue they refused to consider in Brown, which basically stands for the proposition that failure to read is no excuse as a matter of law. And that principle has been applied in a number of contexts, which we cite. High Supreme Court with respect to contracts where somebody says, I didn't read the contract. Investment cases where someone said, I didn't read the prospectus. Disclosure is what's key, and I suggest to the court that in due diligence disclosures, in connection with a merger transaction, it's very important to apply that principle here because otherwise anyone could unwind a merger transaction by claiming that they hadn't read something that was provided to them in the due diligence. And you would have a lot more litigation with respect to that. And in addition, you're going to have the same thing happening. But the other unfairness associated with that is it puts the burden of proof on the other side to prove that somebody read something that you gave them in connection with a due diligence document. And as the district court held, I think appropriately, quote, sequent did what it was supposed to do, disclose the material information in a letter provided as part of the due diligence documents. And Mr. Eskew in his brief has not cited any law for the proposition that there can be an issue of fact on whether someone exercised ordinary diligence in not reading an important document that was given to them. The Rubin case and the Moore case, both of them involved a situation where critical facts were not disclosed. And the issue was whether there was reasonable diligence in discovering the facts that had not been disclosed. In Moore, the argument was you should ask for additional business records. The fact pattern there was that somebody had lied about things, so they didn't ask. And in Rubin, they should have found out information about default by contacting the defendant's bank. But the lawyer for the defendant had said, don't contact the bank. There's no problem. In neither case, and in no case, that I've seen or that they've cited stands for the proposition that you can have a question of fact on not reading something. It's never been an excuse in the law. As an alternate basis for affirmance, we had argued that there was no material breach as a matter of law. And that's assuming if you get past the judicial estoppel argument. And I do want to go back to Judge Bell's questions about Heine's case. It is undisputed that no court or administrative agency ever found any violation of the law by sequent. It is also undisputed that sequent consistently maintained that they had done nothing wrong. And it's also undisputed that Mr. Eskew, in three years of litigation, as the district court noted in their decision, never came forward with any law that suggested, that established, that sequent had done anything wrong. We told them in that letter exactly what our position was, that we had a potentially prohibited transaction, and there was a pending criminal investigation. And it's undisputed that the only thing that we had done is provide documents and some people for interviews. No grand jury testimony, no indictments, no pleas. And as the court is probably aware from their criminal docket, the government doesn't tell you what they're doing or what they're thinking. And it wasn't, this is also undisputed, it wasn't until seven months after the merger that the government first told sequent what it was alleging it did wrong in connection with the criminal investigation. The last point that I will make is that the criminal and civil investigation that is mentioned in this letter, that was disclosed as the only contingent liability disclosure as part of the due diligence, accurately represents exactly what the criminal investigation was. It was of the plan. The due diligence item was to produce the auditor's letter that pertains to the contingent liabilities of the company. The criminal and civil investigation was always of the plan. As a sponsor and related party, sequent, of course, had consequences or potential consequences associated with that. And notwithstanding that, there were no, and the last point that I'll make is that every one of the business advisors to Mr. Eskew, his lawyers, his accountant, his expert witness in this case said the same thing. As part of due diligence, you want to figure out what are contingent liabilities and what they are about. The only contingent liability out there was the DOL investigation. It was explicitly mentioned in the merger agreement and the details of what sequent knew, as Judge Frost found, were on the face of this letter. And yet, no one asked any additional questions. And I asked Mr. Sklar at deposition, if you thought that this was the wrong letter, did you ask opposing counts or the Sklar, Sanders, and Dempsey, who was on the other side of the transaction, for the correct letter? No. Why not? I can't answer that. And that is what the record reflects. Thank you. I see my time is up. Thank you, counsel. Counsel? If I may, Your Honors, I'd like to address just a couple of points. With respect to this letter, if it had been the letter called for and it hadn't been read, that would be one thing. But since it's not the letter called for, and it's in the context of many, many other documents that should have been produced and the reps and warranties that are clearly misleading, say nothing about a criminal investigation, the conversations, the negotiations over a period of year where this was consistently said to be routine, I believe that the question of whether or not the judgment made by the lawyer, whether or not the intent by putting that letter, just that letter in the file, was an intent to mislead is an issue that should be decided by the jury. What letter should have been there rather than this one? The letter that was called for, the most recent letter by the company to its auditors, Hauser and Taylor. That letter wasn't completed until well into the following year. It was delayed. And the auditor testified that she did not become aware of the criminal investigation until after June of 2007 when the next year's audit was underway. So there was not a letter that should have been told, we don't have the letter you want. So are you saying that a potential criminal, I'll turn that around, a potential civil and criminal investigation into the plan, because this letter indicated it was into the plan, that that simply wasn't of concern? No, I'm not saying that at all. Well, then if it was of concern, why are you saying it wasn't a letter that you would have read? If the lawyers had not been misled by the heading on the letter, the address and the ray and what they had read in the first paragraph, they would have read that. They never got that far because they were misled by what was at the top of the letter. That's just awfully hard to believe. I mean, the letter is, what, a page and a half long? I mean, it's not a long document. It's the only thing in the tab, isn't it? It's what happened. It's the testimony. I just find that incredible, that's all. Well, it may be what happened, but that doesn't excuse the failure necessarily. I mean, there's a reason for the term due diligence. And if you can claim that you did undertake a due diligence investigation and that you didn't find something because you were, the heading on a piece of paper wasn't what you would have expected. I think that what we have to appreciate is these fellows are going through four boxes of documents and they're going through them and they're looking for what they're looking for. They saw this and they elected to pass it. Do they wish they had not? Of course. But they did. And the question is, when the wrong document is intentionally put there by the other side, are we charged with that fact, with overcoming that fact? And I don't think we are. I think there's a jury question whether that was reasonable or not. The one other point that I'd like to address is the language that Mr. Savage quoted from the briefs, which is time barred. And sequence claim was time barred because they had failed to give timely notice within the terms of the contract. The use of the word time barred doesn't mean it relates to the statute of limitations. And so that word is being dragged out and said to reference the statute of limitations. Arcade is clear on that point. Arcade says the contract has to be clear. The intention of the parties has to be clear to modify the statute of limitations. There's nothing ambiguous about this contract. The contract is perfectly clear. Parties decided how you give notice under the contract. Failure to give notice as the contract prescribes time bars the claim. That's what the argument was. And the court below conflated limitations and perfection of claim under the contract. Thank you, Your Honors. Thank you, Counsel. The case will be submitted.